**DAVIS LAW GROUP, PLC**
  D. Jason Davis (State Bar No. 193225)
17383 W. Sunset Blvd., Suite A380
Pacific Palisades, California  90272
Telephone:  (424) 256-0700
Facsimile:   (424) 256-7950
jdavis@dlglawcorp.com

Attorneys for Plaintiff,
ELLEN THOMAS

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLEN THOMAS, an individual,<br><br>             Plaintiff,<br><br>vs.<br><br>NORTHROP GRUMMAN CORPORATION; NORTHROP GRUMMAN PLANS ADMINISTRATIVE COMMITTEE; NORTHROP GRUMMAN ELECTRONIC SYSTEMS-SPACE DIVISION CONSOLIDATED PENSION PLAN; NORTHROP GRUMMAN ERISA SUPPLEMENTAL PLAN,<br><br>             Defendants. | CASE NO.:  CV-15-2115<br><br>**COMPLAINT FOR:**<br>**(1)   TO RECOVER BENEFITS DUE UNDER ERISA, ENFORCE AND/OR CLARIFY RIGHTS UNDER ERISA, AND ENFORCE THE TERMS OF ERISA, 29 U.S.C.§ 1132(a);**<br>**(2)   VIOLATION OF ERISA § 404;**<br>**(3)   ESTOPPEL;**<br>**(4)   BREACH OF WRITTEN CONTRACT**<br>**(5)   BREACH OF IMPLIED CONTRACT;**<br>**(6)   MISREPRESENTATION;**<br>**(7)   BREACH OF FIDUCIARY DUTY;**<br>**(8)   NEGLIGENCE; AND**<br>**(9)   VIOLATION OF ERISA § 404(a)(1)(D)** |

## I.     PRELIMINARY STATEMENT

1.     This Complaint arises from the negligence and breaches of fiduciary duty by Defendant Northrop Grumman Corporation and the pension plans that it sponsors, Defendant Northrop Grumman Electronic Systems-Space Division

1

COMPLAINT FOR:  (1) TO RECOVER BENEFITS DUE UNDER ERISA, ENFORCE AND/OR CLARIFY RIGHTS UNDER ERISA, AND ENFORCE THE TERMS OF ERISA, 29 U.S.C.§ 1132(a); (2) VIOLATION OF ERISA § 404; (3) ESTOPPEL; (4) BREACH OF WRITTEN CONTRACT; (5) BREACH OF IMPLIED CONTRACT; (6) MISREPRESENTATION; ETC.

Consolidated Pension Plan and Defendant Northrop Grumman ERISA Supplemental Plan, which are administered by Defendant Northrop Grumman Plans Administrative Committee (collectively, "Defendants").  Defendants failed to properly administer the pension plans that Plaintiff Ellen Thomas ("Plaintiff") participated in while employed by Defendant Northrop Grumman Corporation.  Upon Plaintiff's retirement in 2008, Defendants failed to disclose:  (1) that Defendants miscalculated the amount of Plaintiff's retirement benefits; (2) that she was a participant in the Defendant Northrop Grumman ERISA Supplemental Plan (the "NG Supplemental Plan"), (3) that she was required to make an election to receive a lifetime annuity from the NG Supplemental Plan; and (4) that failure to make the election upon retirement would subject Plaintiff to hundreds of thousands of dollars of tax liability, penalties and interest.  Plaintiff relied to her detriment that Defendants' representations were accurate regarding her pension plan benefits and tax liability when making the decision to retire.  Defendants concealed their errors, omissions and breaches of fiduciary duty for almost five years until they sent Plaintiff a check in the amount of $314,320.024 along with three letters explaining that they erred when they failed to pay to Plaintiff a lifetime annuity as required under the terms of the NG Supplemental Plan when she retired in 2008.  As a result of Defendants' errors, Plaintiff has paid more than $340,000.00 in taxes, penalties and interest.

## II.    JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 1332 and 1337, and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

3.    Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the breaches occurred and caused consequences in this judicial district.  Plaintiff was employed by Defendants in this judicial district; Plaintiff received the benefits at issue from the NG Supplemental Plan and the Northrop Grumman Electronic Systems – Space Division Consolidated Pension

Plan ("NG ESSD Plan") in this district; Defendants regularly conduct business in this district and the events giving rise to this case took place in this judicial district as a result of the employment relationship entered into in this judicial district.

### III.   THE PARTIES

4.     Plaintiff Ellen Thomas resides in Los Angeles County, California and is a participant in Defendant NG ESSD Plan and, unknowingly, the NG Supplemental Plan.

5.     Defendant Northrop Grumman Corporation ("NGC") is a corporation organized under the laws of Delaware and is qualified to and does conduct business in the state of California.  NGC has its principal place of business located in Falls Church, Virginia.

6.     Defendant Northrop Grumman Plans Administrative Committee (the "Plan Administrator") administers NGC's various pension plans, including the NG ESSD Plan and the NG Supplemental Plan.  The Plan Administrator's principal place of business is Falls Church, Virginia.  On information and belief, the Plan Administrator at all times herein alleged was and is comprised of employees of NGC and were acting within the scope of their employment with respect the acts alleged herein.

7.     Defendant Northrop Grumman Electronic Systems – Space Division Consolidated Pension Plan, on information and belief, is a qualified pension plan subject to ERISA with its principal place of administration located in Falls Church, Virginia.  Plaintiff was a participant in the NG ESSD Plan at the time she retired.

8.     Defendant Northrop Grumman ERISA Supplemental Plan formerly known as the Northrop Corporation ERISA Supplemental Plan 1 is a non-qualified "top hat" plan intended to comply with IRC section 409A with its principal place of administration located in Falls Church, Virginia.  Defendants claim that this plan restores benefits to employees that are limited due to Internal Revenue Code section 415.

## IV.   **GENERAL ALLEGATIONS**

9.     Plaintiff worked for Aerojet-General Corporation, located in Azusa, California, for many years until NGC acquired the business and assets of Aerojet-General Corporation on or about August 2, 2001.  Following the acquisition of Aerojet-General Corporation, Plaintiff became an employee of NGC.

10.     Plaintiff retired from her employment with NGC on July 31, 2008.

11.     During her employment, she participated in the available retirement programs provided and administered by NGC, which included the NG ESSD Plan.

12.     Unbeknownst to Plaintiff, she was also a participant in the NG Supplemental Plan.  On the date of Plaintiff's retirement and at no time before, Plaintiff was never informed that she was a participant in the NG Supplemental Plan, that she was entitled to any benefits from the NG Supplemental Plan or that she was required to make an election for a lifetime annuity from the NG Supplemental Plan at or before the time she retired.

13.     Defendants represent that the NG Supplemental Plan is a non-qualified deferred retirement plan pursuant to the Internal Revenue Code ("IRC") and Employee Retirement Security Act of 1974 ("ERISA").

14.     According to the amended and restated Plan Document effective as of January 1, 2012, "the purpose of this [NG Supplemental] Plan is simply to restore to employees of the Company the benefits they lose under the Pension Plans as a result of the benefit limits in Code section 415, as amended, or any successor section ("section 415"), as the benefit limits are described in the applicable Pension Plan."

15.     Prior to retirement, Plaintiff discussed her options with the Plan Administrator, including the benefit calculations for the various plans from which she was entitled to receive benefits and the tax consequences affecting any payments or payment streams.

16.     The Plan Administrator provided calculations of the benefits to which she was entitled and the tax liability on the income she would receive.  At no time

did NGC or the Plan Administrator discuss benefit calculations or tax consequences related to the NG Supplemental Plan.

17.    Plaintiff relied on Defendants to furnish accurate and correct information to Plaintiff regarding her retirement benefits and to perform their duties in good faith.

18.    Plaintiff relied on Defendants to perform their duties without reckless disregard of the accuracy of the information that Defendants provided.

19.    Plaintiff relied on Defendants' representations in reaching a decision to retire in 2008.

20.    If the NG Supplemental Plan is a "top-hat" plan, it is a unilateral contract and Plaintiff completed her required performance under the terms of the plan by the time that she retired.

21.    At the time of retirement, Plaintiff's interest in the NG ESSD Plan and the NG Supplemental Plan had vested as a matter of statutory and/or federal common law concerning contracts.

22.    At the time of retirement, Plaintiff's interest in the distribution under the NG Supplemental Plan vested.

23.    The NG Supplemental Plan was subject to a plan document that was, on information and belief, most recently amended and restated effective January 1, 2012.

24.    Under the terms of the NG Supplemental Plan, payment of Plaintiff's benefit had to begin on the first day of the month following Plaintiff's retirement.  In addition, the terms of the NG Supplemental Plan only allowed Plaintiff to choose (a) a single life annuity or (b) a 50%, 75% or 100% Joint and Survivor Annuity.  A lump sum payment from the NG Supplemental Plan is only allowed in cases where the present value of a retiree's benefit is $25,000 or less on the date of retirement.

25.    Because Plaintiff's NG Supplemental Plan benefit far exceeded $25,000, a lump sum payment was not allowed.  Plaintiff should have been paid in

the form of a lifetime annuity, but was not given that option by Defendants nor was she informed of her election options at the time she retired.

26.   According to the Summary Plan Description for the NG Supplemental Plan, NGC was supposed to make a special disbursement on Plaintiff's retirement date to pay the full amount of her tax liability for FICA taxes, then Plaintiff would reimburse NGC for the payment by reducing Plaintiff's future payments "by a small amount over [her] lifetime."  Because Defendants did not follow the terms of the NG Supplemental Plan, Plaintiff was not paid in the form of a lifetime annuity and has been deprived of this benefit.

27.   The NG Supplemental Plan provided for the supplemental benefit to be paid at retirement.

28.   Plaintiff retired from NGC effective July 31, 2008.

29.   After her retirement, Plaintiff received monthly retirement benefits from the NG ESSD Plan, but no benefits from the NG Supplemental Plan.

30.   Almost five years later, on March 29, 2013, Plaintiff received a check in the mail in the amount of $314,320.24 from Defendants.  On or about March 25, Plaintiff received three letters or "notices" in the mail with regard to the check and the change in Plaintiff's benefits.

31.   One letter was entitled, "Recalculation Notice" that purported to apply to Plaintiff's NG ESSD Plan benefit and NG Supplemental Plan benefit.  In the letter, it stated:  "While conducting routine audits, we discovered that Section 415 of the Internal Revenue Code ("Section 415") was not properly applied to your pension benefits.  We had to re-calculate your [NG ESSD Plan] benefits.  As a result your recalculated benefit from the [NG ESSD Plan] (qualified) is less than previously communicated.  However, the [NG Supplemental Plan] (the "ERISA I") is a non-qualified pension plan which restores benefits that are limited due to Section 415.  Because your benefit from the [NG ESSD] Plan was limited due to Section 415 you now have a benefit payable from the ERISA I which keeps your benefits whole."

COMPLAINT FOR:  (1) TO RECOVER BENEFITS DUE UNDER ERISA, ENFORCE AND/OR CLARIFY RIGHTS UNDER ERISA, AND ENFORCE THE TERMS OF ERISA, 29 U.S.C.§ 1132(a); (2) VIOLATION OF ERISA § 404; (3) ESTOPPEL; (4) BREACH OF WRITTEN CONTRACT; (5) BREACH OF IMPLIED CONTRACT; (6) MISREPRESENTATION; ETC.

32.    The letter further stated that between August 1, 2008 and March 1, 2013, and due to Defendants' errors, there was an overpayment of Plaintiff's NG ESSD Plan benefit in the amount of $29,407.47.  Plaintiff was directed to send a check payable to NGC in that amount to Defendants' Northrop Grumman Benefits Center, which she did immediately, on March 26, 2013.

33.    The letter also included information about Defendants' failure to timely pay Plaintiff her benefit under the NG Supplemental Plan and acknowledged that Defendants had made the error that negatively impacted and impaired Plaintiff's benefits:  "Our records indicate that you have not received the [NG Supplemental Plan] benefit you are due."  As a result, Defendants were making a one-time payment in the amount of $467,210.48 that purportedly represented the present value of her NG Supplemental Plan benefit amount after FICA is applied. Defendants explained that they had enclosed a "FICA Taxation Notice" in the letter to provide more details of her benefit regarding application of FICA and other federal and state taxes that "may" apply to Plaintiff's NG Supplemental Plan benefit.

34.    In this same letter Defendants explained that their failure to pay Plaintiff her benefit due resulted in tax consequences:  "Your post-2004 benefits must start on the first of the month coincident with or following the later of the date you reach age 55 or terminate employment from Northrop Grumman.  Because your [NG Supplemental Plan] benefit did not start timely, there is a tax consequence. Enclosed is additional information to explain the impact and next steps to correct. **Your action will be needed**."

35.    Another letter included among the letters from Defendants was entitled "ERISA I," which provided: "[t]his notice applies to the Northrop Grumman ERISA Supplemental Plan (the "ERISA I"). **For reasons explained below, you will need to file an amended 2008 federal income tax return and an amended 2008 California income tax return by April 15, 2013."**  This letter explained that

Plaintiff should have started receiving annuity payments from the NG Supplemental Plan on August 1, 2008, but because Defendants did not pay this benefit timely, they decided to calculate and distribute a one-time payment of her NG Supplemental Plan benefit, which was a violation of the terms of the NG Supplemental Plan. The letter further explained that because Defendants had violated the rules related to payment of Plaintiff's NG Supplemental Plan benefit, she "may be subject to very adverse tax treatment." Defendants also noted that they were required to report their error to the IRS.

36.     Because of Defendants' late notice of their error, Defendants advised Plaintiff that she had approximately two weeks to seek advice from appropriate tax counsel and take action with respect to Defendants' errors by April 15, 2013.

37.     Defendants claimed that it was their intention to make Plaintiff whole with respect to any additional tax and interest amounts related to what they termed the "correction process," as well as any related tax preparation fees. Defendants, however, have failed and refused to make Plaintiff whole and have not reimbursed or compensated Plaintiff for all of the damage they have caused Plaintiff with regard to their errors in calculating Plaintiff's retirement benefits.

38.     On April 14, 2013, Plaintiff learned through her accountant that Plaintiff's errors resulted in severe, adverse tax liabilities that Plaintiff would not have otherwise been subject had Defendants accurately informed her of all of her retirement benefits and obligations with respect to the NG ESSD Plan and NG Supplemental Plan at the time she retired in 2008. Plaintiff was required to make significant payments to state and federal tax authorities, in addition to the $169,509.54 that was withheld by Defendants in connection with the one-time payment made to Plaintiff on March 29, 2013.

39.     On April 14, 2013, Plaintiff was required to and did make a payment to the United States Treasury in the amount of $123,627.00 as a result of Defendants' errors related to her retirement benefits. Also, on April 14, 2013, Plaintiff was

required to and did make a payment to the California Franchise Tax Board in the amount of $13,792.00.

40.     To date, Plaintiff has paid more than $340,000.00 in tax, penalties, and interest, and continues to incur additional accounting and legal fees as a result of Defendants' errors.

41.     Non-qualified deferred compensation plans are subject to a one-time special statutory timing provision applicable to the assessment of taxes under the Federal Insurance Contribution Act (FICA), 26 U.S.C. § 3101(v)(2)(a).

42.     This IRC timing provision provides favorable treatment to the participants in such plans at the time of retirement and it is available only at the time of retirement.

43.     The Act provides that the FICA liability on a retiring participant's nonqualified deferred compensation plan is assessed on the present value of the entire benefit, subject to the maximum cap in place for FICA taxes in the year of retirement (even if the participant elects to receive the benefits as a stream of income over a period of years.)

44.     This one-time present value assessment has the impact of negating or substantially minimizing any FICA taxes that may have been payable on the retirees' nonqualified deferred compensation plan.

45.     The availability of this one-time FICA special timing for assessing FICA has beneficial tax consequences for the participants because FICA is paid only on a capped amount, meaning that the majority if not all of the pension benefit will not be taxed even if the participant elects to receive the benefit over time in a monthly distribution because the participant paid the maximum during the retirement year.

46.     Plaintiff made efforts to contact Defendants to question and challenge the change in her benefits and the additional tax liability Plaintiff was subject to as a result of Defendants' errors.  Plaintiff demanded that Defendants accept

responsibility for their errors and reimburse Plaintiff for all of the additional taxes, penalties, interest and professional fees Plaintiff has been required to pay.

47.   To date, Defendants have refused to reimburse Plaintiff for all of the damages and reduction in retirement benefits caused by Defendants' errors.

48.   Defendants acted with gross negligence and recklessness in failing to properly determine what benefits Plaintiff was entitled to receive and any taxes that may have been payable at the time of Plaintiff's retirement in 2008.

49.   Defendants were conflicted and acted in their own self-interest when they recognized their error and failed to disclose it to Plaintiff until they paid Plaintiff her additional benefits owed on March 29, 2013.

50.   Defendants acted in their own self-interest when they contacted the IRS regarding their errors without apprising Plaintiff.

51.   Defendants acted in their own self-interest when they discovered their error and failed to apprise Plaintiff until almost five years after she was entitled to receive her retirement benefits.

52.   Defendants have acted wrongfully and unilaterally by reducing Plaintiff's retirement benefits and requiring her to reimburse Defendants for their own error.

53.   Defendants have benefited themselves by their reimbursement to themselves for their own error.

54.   Defendants have acted with a conflict of interest to financially benefit Defendants to the detriment of Plaintiff.

55.   Once Plaintiff's benefit amount was determined and agreed upon at the time of retirement, Defendants did not have the right to unilaterally diminish and impair that amount.

56.   Plaintiff fully performed under the terms of the contract between the parties and Defendants could not retrospectively change the terms of the agreement.

57.   Defendants, acting in their own best interest and without good faith,

COMPLAINT FOR:  (1) TO RECOVER BENEFITS DUE UNDER ERISA, ENFORCE AND/OR CLARIFY RIGHTS UNDER ERISA, AND ENFORCE THE TERMS OF ERISA, 29 U.S.C.§ 1132(a); (2) VIOLATION OF ERISA § 404; (3) ESTOPPEL; (4) BREACH OF WRITTEN CONTRACT; (5) BREACH OF IMPLIED CONTRACT; (6) MISREPRESENTATION; ETC.

assessed the cost of their error to Plaintiff.

58.     Defendants, acting in their own self-interest and without good faith, chose not to pay the entire amount caused by their error and instead initiated a plan that resulted in Plaintiff being liable for additional taxes, penalties and interest that she otherwise would not have been subjected to had Defendants accurately determined Plaintiff's benefits when she retired.

59.     As a result of Defendants' errors, Plaintiff's promised benefits have been impaired and diminished.

60.     Defendants have wrongfully imposed the consequences of their error on Plaintiff and other NGC retirees and impaired their right to the established benefits.

## FIRST CAUSE OF ACTION
## TO RECOVER BENEFITS DUE UNDER ERISA, ENFORCE
## AND/OR CLARIFY RIGHTS UNDER ERISA, AND ENFORCE
## THE TERMS OF ERISA, 29 U.S.C. § 1132(a)

61.     Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

62.     Plaintiff brings this action to recover benefits due under ERISA, to enforce and clarify rights under ERISA and to enforce the terms of ERISA pursuant to 29 U.S.C. § 1132(a).

63.     Due to Defendants' conduct and error as alleged herein, plan benefits have been wrongfully withheld by Defendants from Plaintiff for the benefit of Defendants so that they would not have to pay for their own error.

64.     Defendants have a duty of good faith and fair dealing.

65.     Defendants breached their duty of good faith and fair dealing.

66.     Pursuant to 29 U.S.C. § 1132(a), Plaintiff seeks the following relief:

a.     All such equitable relief as is available, including the difference between what she was owed and the amount she actually received plus applicable

interest;

b.     Disgorgement and restitution of such amounts to Plaintiff that have been wrongfully appropriated;

c.     Declaratory relief to compel the Defendants to cease the deduction from Plaintiff's retirement benefit checks of all such payments caused by Defendants' mistake.

d.     Attorneys' fees and costs pursuant to 29 U.S.C. § 1132(a)

e.     All other available relief pursuant to 29 U.S.C. § 1132(a)

f.     Damages, costs, and applicable attorneys' fees incurred as a result of the violation of ERISA § 503(a)(3).

g.     Any other equitable or remedial relief as the court may deem appropriate.

## SECOND CAUSE OF ACTION
## VIOLATION OF ERISA § 404

67.     Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

68.     Defendants breached their fiduciary duties to Plaintiff by failing to properly calculate Plaintiff's retirement benefits due under the NG ESSD Plan and the NG Supplemental Plan and any applicable tax liability at the time of retirement. Defendants also breached their fiduciary duties by failing to inform Plaintiff that she needed to elect payment of a lifetime annuity under the NG Supplemental Plan on the date she retired and then failed to disclose that fact for almost five years.

69.     Defendants breached their fiduciary duties in administering the NG ESSD Plan and NG Supplemental Plan in the self-interest of Defendants and contrary to the best interest of the plan participants, including Plaintiff.

70.     Defendants breached their fiduciary duties by failing to disclose their error to Plaintiff in a timely manner.

71.     Defendants breached their fiduciary duties by assessing the

COMPLAINT FOR: (1) TO RECOVER BENEFITS DUE UNDER ERISA, ENFORCE AND/OR CLARIFY RIGHTS UNDER ERISA, AND ENFORCE THE TERMS OF ERISA, 29 U.S.C.§ 1132(a); (2) VIOLATION OF ERISA § 404; (3) ESTOPPEL; (4) BREACH OF WRITTEN CONTRACT; (5) BREACH OF IMPLIED CONTRACT; (6) MISREPRESENTATION; ETC.

consequences of their error to the detriment of Plaintiff and refusing to compensate and reimburse Plaintiff for all of the damage they have caused Plaintiff.

72.    These breaches constituted breaches of Defendants' duties under ERISA § 404, 29 U.S.C. § 1104.

73.    As a direct and proximate cause of the fiduciary breaches and ERISA violations, Plaintiff is entitled to all such relief as available under ERISA.

74.    Pursuant to 29 U.S.C. § 1132(a), Plaintiff seeks the following relief:

a.    All such equitable relief as is available, including the difference between what she was owed and the amount she actually received plus applicable interest;

b.    Disgorgement and restitution of such amounts to Plaintiff that have been wrongfully appropriated;

c.    Declaratory relief to compel the Defendants to cease the deduction from Plaintiff's retirement benefit checks of all such payments caused by Defendants' mistake.

d.    Attorneys' fees and costs pursuant to 29 U.S.C. § 1132(a)

e.    All other available relief pursuant to 29 U.S.C. § 1132(a)

f.    Damages, costs, and applicable attorneys' fees incurred as a result of the violation of ERISA 503(a)(3).

g.    Any other equitable or remedial relief as the court may deem appropriate.

## THIRD CAUSE OF ACTION
## ESTOPPEL

75.    Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

76.    Plaintiff is entitled to relief on the basis of estoppel and federal common law.

77.    At the time of retirement, Defendants represented to Plaintiff the value

of her benefits, her options and the tax liability on her benefits.

78.   Plaintiff acted in reliance on those representations and elected to retire in 2008.

79.   Defendants made an error that has irrevocably caused Plaintiff not to receive the value of the contract for her retirement benefits.

80.   Defendants acted with reckless disregard of their obligations of good faith and fair dealing.

81.   Defendants, acting with gross negligence and reckless disregard of their obligations, failed to properly calculate Plaintiff's retirement benefits due under the NG ESSD Plan and the NG Supplemental Plan and any applicable tax liability at the time of Plaintiff's retirement.

82.   Defendants, acting with gross negligence and reckless disregard of their obligations, misrepresented Plaintiff's retirement benefits and the tax implications at the time of her retirement.

83.   Plaintiff justifiably and reasonably relied on Defendants' representations at the time of retirement to her detriment.

84.   Defendants continued to misrepresent and conceal these matters from Plaintiff for almost five years while at the same time reporting these errors to the IRS.

85.   Defendants made a unilateral decision to pass the cost of their error on to Plaintiff.

86.   Defendants are thus estopped to deny the panoply of relief sought herein, including restoring and disgorging the monies wrongfully removed from Plaintiff s retirement benefit to reimburse itself for its wrongful conduct and enjoining Defendants from removing any further monies from the benefits caused by its wrongful conduct and breaches.  WHEREFORE, Plaintiff seeks all such relief to which she is entitled including costs and attorneys' fees.

///

COMPLAINT FOR:  (1) TO RECOVER BENEFITS DUE UNDER ERISA, ENFORCE AND/OR CLARIFY RIGHTS UNDER ERISA, AND ENFORCE THE TERMS OF ERISA, 29 U.S.C.§ 1132(a); (2) VIOLATION OF ERISA § 404; (3) ESTOPPEL; (4) BREACH OF WRITTEN CONTRACT; (5) BREACH OF IMPLIED CONTRACT; (6) MISREPRESENTATION; ETC.

## FOURTH CAUSE OF ACTION
## BREACH OF WRITTEN CONTRACT

87.    Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

88.    Plaintiff rendered services to NGC.

89.    The terms of the employee pension benefit plans available to Plaintiff constituted an offer and the contract was accepted by Plaintiff's full performance.

90.    Defendants cannot change the terms of the contract retrospectively to impair or alter Plaintiff's rights after she fully performed under the terms of the agreement and retired.

91.    Plaintiff s rights in the amount of benefits vested at the time of retirement and the parties agreed as to the amount of those benefits at the time of retirement.

92.    Defendants' obligation to pay the actual benefits due under the plan was effective at the time Plaintiff retired.

93.    Contracts include a duty to act with good faith and fair dealing.

94.    Plaintiff did not consent to the changes in the terms of her retirement benefit.

95.    Defendants breached the contract between the parties, including their duties of good faith and fair dealing (1) at the time of retirement; (2) then when they discovered their error and failed to disclose it timely; and (3) in 2013 by impairing Plaintiff's benefits.

96.    Plaintiff sustained damages as a result of Defendants' breaches of the contract.  WHEREFORE, Plaintiff requests all such equitable relief and damages to which she is entitled, including costs and attorneys' fees.

///
///
///

COMPLAINT FOR:  (1) TO RECOVER BENEFITS DUE UNDER ERISA, ENFORCE AND/OR CLARIFY RIGHTS UNDER ERISA, AND ENFORCE THE TERMS OF ERISA, 29 U.S.C.§ 1132(a); (2) VIOLATION OF ERISA § 404; (3) ESTOPPEL; (4) BREACH OF WRITTEN CONTRACT; (5) BREACH OF IMPLIED CONTRACT; (6) MISREPRESENTATION; ETC.

# FIFTH CAUSE OF ACTION
## BREACH OF IMPLIED CONTRACT

97.    Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

98.    Plaintiff rendered services to NGC.

99.    The terms of the employee pension benefit plans available to Plaintiff constituted an offer and the contract was accepted by Plaintiff's full performance.

100.   Defendants cannot change the terms of the contract retrospectively to impair or alter Plaintiff's rights after she fully performed under the terms of the agreement and retired.

101.   Plaintiff s rights in the amount of benefits vested at the time of retirement and the parties agreed as to the amount of those benefits at the time of retirement.

102.   Defendants' obligation to pay the actual benefits due under the plan was effective at the time Plaintiff retired.

103.   Contracts include a duty to act with good faith and fair dealing.

104.   Plaintiff did not consent to the changes in the terms of her retirement benefit.

105.   Defendants breached the contract between the parties, including their duties of good faith and fair dealing (1) at the time of retirement; (2) then when they discovered their error and failed to disclose it timely; and (3) in 2013 by impairing Plaintiff's benefits.

106.   Plaintiff sustained damages as a result of Defendants' breaches of the contract.  WHEREFORE, Plaintiff requests all such equitable relief and damages to which she is entitled, including costs and attorneys' fees.

///
///
///

COMPLAINT FOR:  (1) TO RECOVER BENEFITS DUE UNDER ERISA, ENFORCE AND/OR CLARIFY RIGHTS UNDER ERISA, AND ENFORCE THE TERMS OF ERISA, 29 U.S.C.§ 1132(a); (2) VIOLATION OF ERISA § 404; (3) ESTOPPEL; (4) BREACH OF WRITTEN CONTRACT; (5) BREACH OF IMPLIED CONTRACT; (6) MISREPRESENTATION; ETC.

# COUNT VI

## MISREPRESENTATION

107.   Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

108.   Defendants represented to Plaintiff the value of the benefits she would receive upon retirement, that she was only due benefits from the NG ESSD Plan and the tax consequences associated with the distribution of her benefits.

109.   Defendants had a duty to properly inform Plaintiff:  (a) that her benefit under the NG ESSD Plan exceeded the amounts allowed by law; (b) that she was a participant in the NG Supplemental Plan; (c) that she had rights and obligations as a participant in the NG Supplemental Plan; (d) that she was required to make an election to be paid a lifetime annuity under the NG Supplemental Plan; and (e) of the amount of benefits she would receive.

110.   Defendants had a duty to make certain that the representations that they made were accurate.

111.   Defendants had a duty to determine whether the benefit payable to Plaintiff conformed to all applicable laws at the time of her retirement.

112.   Defendants misrepresented to Plaintiff the amount of her retirement benefits, the retirement plans in which she was a participant and her tax liability when she retired in 2008.

113.   Defendants acted with willful and gross negligence and recklessness by misrepresenting the amount of Plaintiff's retirement benefits, the retirement plans in which she was a participant and her tax liability when she retired in 2008.

114.   Defendants engaged in a further misrepresentation when between 2008 and 2013, they did not inform Plaintiff of their error even while they informed the IRS of their error.

115.   At the time of retirement, Plaintiff reasonably and justifiably relied on Defendants' representations to her detriment.

116.   But for Defendants' misrepresentations, Plaintiff would have elected to receive a lifetime annuity from the NG Supplemental Plan on the date of her retirement and would not have been assessed any additional taxes, penalties and interest for failing to elect a lifetime annuity from the NG Supplemental Plan, which has resulted in the reduction and impairment of Plaintiff's retirement benefits.

117.   As a result of Defendants' misrepresentations, Plaintiff suffered damages.   WHEREFORE, Plaintiff requests judgment against Defendants for misrepresentation including (a) damages in an amount to be determined at trial; (b) applicable interest, costs and expenses of this action, including reasonable attorneys' fees and such other and further relief as the court deems just and proper.

## SEVENTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

118.   Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

119.   Defendants represented to Plaintiff the value of the benefits she would receive from the NG ESSD Plan and the tax consequences associated with the distribution.

120.   Defendants had a fiduciary duty in its relationship with Plaintiff when they counseled her regarding her benefits and tax liability.

121.   At the time of Plaintiff's retirement, Defendants had a fiduciary duty to properly inform Plaintiff that her benefit under the NG ESSD Plan exceeded the Section 415 limitation, that she was a participant in the NG Supplemental Plan, that she was required to make a distribution election under the NG Supplemental Plan and that failure to make such an election carried severe, adverse tax consequences.

122.   Defendants had a fiduciary duty to make certain that the representations that they made were accurate and that any functions they undertook were performed correctly.

123.   Defendants had a duty to accurately determine Plaintiff's retirement

COMPLAINT FOR:   (1) TO RECOVER BENEFITS DUE UNDER ERISA, ENFORCE AND/OR CLARIFY RIGHTS UNDER ERISA, AND ENFORCE THE TERMS OF ERISA, 29 U.S.C.§ 1132(a); (2) VIOLATION OF ERISA § 404; (3) ESTOPPEL; (4) BREACH OF WRITTEN CONTRACT; (5) BREACH OF IMPLIED CONTRACT; (6) MISREPRESENTATION; ETC.

benefit and any tax liability at the time of her retirement.

124.   In breach of their fiduciary duties, Defendants misrepresented to Plaintiff, among other things, the amount of her retirement benefit, the tax liability associated with her retirement and that she was only due a payment from the NG ESSD Plan.  Defendants acted with willful and gross negligence and reckless disregard in informing Plaintiff of her benefits and tax liability and in performing their duties in determining Plaintiff's benefits and tax liability.

125.   In breach of their fiduciary duties, Defendants failed to notify Plaintiff of her proper benefit under the NG ESSD Plan and NG Supplemental Plan and the associated tax liability when between July 31, 2008 and March 28, 2013, they did not inform Plaintiff of their error, but did report their error to the IRS.

126.   Plaintiff was damaged as a direct result of Defendants' breaches of fiduciary duty.  WHEREFORE, Plaintiff requests judgment against Defendants for breach of fiduciary duty, including (a) damages in an amount to be determined at trial; (b) applicable interest, costs and expenses of this action, including reasonable attorneys' fees and such other and further relief as the court deems just and proper.

## EIGHTH CAUSE OF ACTION
## NEGLIGENCE

127.   Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

128.   Defendants owed Plaintiff a duty to exercise due care and skill in providing information to Plaintiff at the time of her retirement and when determining the amount of Plaintiff's benefit and any tax obligations associated with her benefit.

129.   Defendants breached their duty in negligently advising Plaintiff and in improperly determining her tax obligations at the time of her retirement.

130.   Defendants' conduct was negligent, willful, reckless and wanton when they committed a gross error and failed to exercise due care and skill in providing

advice to Plaintiff and in failing to promptly discover and disclose that error to Plaintiff.

131.   As a direct and proximate cause of Defendants' negligence and willful, wanton and reckless misconduct, Plaintiff has suffered damages.   WHEREFORE, Plaintiff requests judgment against Defendants for negligence, willful, reckless and wanton negligence including (a) damages in an amount to be determined at trial; (b) applicable interest, costs and expenses of this action, including reasonable attorneys' fees; and (c) such other and further relief as the Court deems just and proper.

## NINTH CAUSE OF ACTION

## VIOLATION OF ERISA § 404(a)(1)(D)

132.   Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

133.   Pursuant to Section 404(a)(1)(D) of ERISA, 29 U.S.C. § 1104(a)(1)(D), a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and in accordance with the documents and instruments governing the plan.

134.   Defendants failed discharge their duties in accordance with the documents and instruments governing the NG ESSD Plan and the NG Supplemental Plan. Specifically, Defendants failed to follow the requirements that Plaintiff be paid the benefit that she was due under each plan.   In addition, Defendants failed to pay Plaintiff a lifetime annuity, which was the only payment allowed under the NG Supplemental Plan.   Instead, Defendants paid Plaintiff in the form of a one-time lump sum payment, which violates the terms of the plan documents.

135.   Defendants should be ordered to restore to Plaintiff all benefits that she did not receive as a result of Defendants' errors in not following the requirements of the plan documents of the NG ESSD Plan and NG Supplemental Plan.

///

///

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully request that this Court grant the following relief:

A.      Payment of the benefits as calculated and vested at the time of retirement;

B.      Disgorgement and restitution of any amounts wrongfully withheld and all taxes, penalties and interest paid by Plaintiff as a result of Defendants' error, including interest;

C.      Declaratory relief stating that Defendants are liable to Plaintiff for all taxes, penalties and interest Plaintiff has been liable to pay as a result of Defendants' error;

D.      Disgorgement of amounts wrongfully removed from Plaintiff s benefits to reimburse Defendants for their error;

E.      Any other damages that are permissible;

F.      Attorneys' fees and costs;

G.      Such other and further relief as the Court may deem just and proper.

DATED: March 20, 2015                **DAVIS LAW GROUP, PLC**


By:_____/s/_____
          D. Jason Davis
          Attorneys for Plaintiff,
          ELLEN THOMAS

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Ellen Thomas hereby demands a trial by jury as to all issues set forth in the Complaint triable by jury.

Respectfully submitted,

DATED: March 20, 2015          **DAVIS LAW GROUP, PLC**

By:_____/s/_____
          D. Jason Davis
          Attorneys for Plaintiff,
          ELLEN THOMAS

22